UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| M-I LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:09-cv-1552 |
| | § | |
| STELLY ET AL., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Pending before the Court is Plaintiff M-I LLC's ("M-I" or "Plaintiff") Motion to Disqualify Boyar & Miller ("B&M") as Counsel (Doc. No. 93), and Defendants' Stelly and Squyres' Motion to Quash the Deposition Notice of Gary W. Miller ("Miller") and Motion for Protective Order (Doc. No. 106). For the reasons set forth below, the Court orders a supervised deposition of Miller, and denies the Motion to Quash.

### I.   BACKGROUND

This suit involves the alleged misappropriation of trade secrets and violation of non-compete agreements by former employees of M-I, including Chad Stelly and Stephen Squyres ("Stelly and Squyres" or "Defendants"), two of the Defendants in this case. Stelly and Squyres both left M-I to work for a rival company, Wellbore Energy Solutions ("WES"). M-I alleges that both employees misappropriated M-I's trade secrets for use in WES's business operations. (Pl.'s 3d Am. Pet. 4.)

Craig Dillard and Michael Perez of Boyar & Miller, PC ("B&M") represent Defendants Stelly and Squyres in this matter. Miller, the chairman of the business group at B&M, formerly represented two entities acquired by Plaintiff M-I. First, Miller and

B&M represented Global Completion Services ("GCS") in its merger with SPS-AFOS International ("SPS"). Miller and B&M then served as local counsel to SPS until August 2006. In August 2006, M-I acquired SPS.

On the basis of these relationships, Plaintiff has filed a motion to disqualify Stelly and Squyres' counsel, B&M. Plaintiff asserts that B&M owes a duty of confidentiality to M-I as a former client. Because Miller and B&M formerly represented entities now owned by M-I, Plaintiff asserts it enjoys an imputed attorney-client relationship with B&M; thus, B&M may not now represent adverse parties Stelly and Squyres. In addition, M-I has noticed the deposition of Gary Miller, a fact that it alleges further warrants disqualification.

## II. APPLICABLE LAW

The Local Rules of the Southern District of Texas provide that "the minimum standard of practice shall be" the Texas Disciplinary Rules of Professional Conduct ("Texas Rules"), although "the court is not limited by that code." LOCAL R. OF THE U.S. DIST. CT. FOR THE S. DIST. OF TEX., app. A, R. 1A-B. The "Texas Rules . . . are not the sole authority governing a motion to disqualify." *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992) (internal quotations omitted) (citing *In re Dresser Indus.*, 972 F.2d 540, 543 (5th Cir. 1992)). In reviewing a motion to disqualify, the Fifth Circuit also "consider[s] . . . the ethical rules announced by the national profession in light of the public interest and the litigants' rights," including the ABA Model Rules of Professional Conduct ("ABA Rules"). *Id.* The parties, however, have briefed only Texas Rules issues.

Motions to disqualify are "'substantive motions affecting the rights of the parties and are determined by applying standards developed under *federal law*.'" *Id.* (emphasis in original) (citing *Dresser*, 972 F.2d at 543). That is, though federal courts may adopt federal or state professional responsibility standards, "whether and how these rules are to be applied are questions of federal law." *Id.* Thus, the Texas Rules do not constrain the discretion of this Court, although they provide a useful starting point.

### III. LEGAL ANALYSIS

#### A. Texas Rule 1.09

Plaintiff is seeking to disqualify B&M based on Texas Rule 1.09, which states, in relevant part:

> (a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:
>
> . . .
>
> (3) if it is the same or a substantially related matter.
>
> (b) Except to the extent authorized by Rule 1.10, when lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a) . . . .

TEX. DISCIPLINARY R. OF PROF'L CONDUCT 1.09, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon Supp. 2008). Since Texas Rule 1.09 does not "differ materially" from its ABA counterpart,[1] it is appropriate for the Court's analysis to center on the Texas Rules. *In re American Airlines*, 972 F.2d at 610 (internal quotations omitted) (citing *In re Dresser Indus.*, 972 F.2d 540, 543 (5th Cir. 1992)).

---

[1] *See* MODEL RULES OF PROF'L CONDUCT R. 1.9 (2009).

3

In order to disqualify opposing counsel, M-I "must establish two elements: 1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify, and 2) a substantial relationship between the subject matter of the former and present representations." *American Airlines*, 972 F.2d at 610 (citations omitted).

### 1. Attorney-Client Relationship

At a minimum, M-I must prove that it enjoyed an actual attorney-client relationship with Miller. It is well settled that "the attorney-client privilege attaches to corporations as well as to individuals." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985). Defendants do not dispute that GCS and SPS, the entities acquired by M-I, enjoyed the privilege with respect to their communications with Miller. Defendants contend, however, that Miller and B&M never represented M-I in any way, and that M-I may not claim a continuation of the privilege through prior entities that it has acquired. (Def.'s Resp. 5.) The question for the Court to decide is whether the attorney-client privilege passed from the former corporate entities onto M-I after the acquisition.

The Supreme Court stated in *Weintraub* that, "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." 471 U.S. at 349. Corporate deals like a "takeover, merger, loss of confidence by shareholders, or simply normal succession" give new management the ability to assert the privileges enjoyed by old officers and directors. *Id.* In the wake of *Weintraub*, some courts have found that corporate deals not referenced in that case, such as a transfer of assets without a sale of stock, does not transfer the attorney-client privilege to the successor corporation. *See Am. Int'l Specialty Lines Ins.*

*Co. v. NWI-I, Inc.*, 240 F.R.D. 401, 406 (N.D. Ill. 2007) (collecting cases). Still others have found that "'whether the attorney-client relationship transfers . . . to the new owners turns on the practical consequences rather than the formalities of the particular transaction.'" *Soverain Software LLC v. Gap, Inc.*, 340 F. Supp. 2d 760, 763 (E.D. Tex. 2004) (quoting *Tekni-Plex, Inc. v. Meyner and Landis*, 674 N.E.2d 663, 668 (N.Y. 1996)). "If the practical consequences of the transaction result in the transfer of control of the business and the continuation of the business under new management, the authority to assert . . . [the] privilege will follow as well." *Id.*

The Court finds the "practical consequences" rule to be persuasive; it most closely follows the *Weintraub* directive that control of a corporation is what matters most. Thus, the Court must analyze under what circumstances M-I acquired both GCS and SPS. In a review of the record, however, the Court finds few documents pertaining to M-I's acquisition of GCS and SPS. In its motion, M-I simply states that it acquired SPS and its affiliated entities. (Pl.'s Mot. 4.) Defendants did attach documentation showing SPS's dissolution. (Def.'s Resp. Ex. B.) However, because the Court is interested in the practical consequences of M-I's acquisition of SPS, rather than the formal nature of the deal, this evidence is insufficient to strike down the motion to disqualify. Therefore, the Court hereby orders Plaintiff to produce asset purchase or merger agreements, and other pertinent documents relating to that which M-I purchased or otherwise received from SPS.

### 2. Substantial relationship between the subject matter of the former and present representations

M-I must also prove that the prior representation alleged to create the conflict is substantially related to the matter now before the Court. *American Airlines*, 972 F.2d at

614. A substantial relationship "may be found only after 'the moving party delineates with specificity the subject matters, issues and causes of action'" common to prior and current representations and the court engages in a 'painstaking analysis of the facts and precise application of the precedent.'" *Id.*

The Court is mindful of the fact that Miller was closely involved in the transfer of contracts and other pertinent documents from GCS to SPS when the entities' merger occurred, and remained as local counsel to SPS until 2006. In these capacities, the Court finds it plausible that Miller was privy to information, including non-compete agreements, that transferred from SPS to M-I. The Court appreciates that Defendants included Miller's affidavit with its response, but finds this information insufficient to conduct the kind of "painstaking analysis" required of it under the Fifth Circuit's *American Airlines* ruling. For that reason, the Court orders a supervised deposition of Gary Miller, within Court chambers at a time to be agreed upon by the parties and the Court. Once the factual record is more fully developed, the Court will revisit the issue of disqualification.

### B. Calling Miller as a Witness

M-I asserts that Miller is likely to be called to testify, and argues that this further warrants B&M's disqualification as counsel. M-I quotes Texas Rule 3.08 in support of this argument, which provides, in pertinent part:

> . . . (b) A lawyer shall not continue as an advocate in a pending adjudicatory proceeding if the lawyer believes that the lawyer will be compelled to furnish testimony that will be substantially adverse to the lawyer's client, unless the client consents after full disclosure.
>
> (c) Without the clients informed consent, a lawyer may not act as advocate in an adjudicatory proceeding in which another lawyer in the lawyer's firm is prohibited by paragraphs (a) or (b) from serving as advocate. If the

lawyer to be called as a witness could not also serve as an advocate under this Rule, that lawyer shall not take an active role before the tribunal in the presentation of this matter.

TEX. DISCIPLINARY R. OF PROF'L CONDUCT 3.08, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon 2005).[2]

According to this Rule, B&M may still represent the Defendants if they give informed consent. Defendants did not indicate in their response whether they had consented to B&M's representation after learning of the potential conflict of interest.

As both Plaintiffs and Defendants point out, this Rule is concerned principally with avoiding confusion to a finder of fact that may occur when one person is both lawyer and witness. That is not a concern at this stage in the litigation. Given that the "disqualification of an entire firm[] is a sanction that must not be imposed cavalierly," the Court cannot disqualify B&M based on the allegations currently before it. *Fed. Deposit Ins. Co. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1316 (5th Cir. 1995). The comment to Texas Rule 3.08 provides that a "lawyer should not seek to disqualify an opposing lawyer under this Rule merely because the opposing lawyer's dual roles may involve an improper conflict of interest with respect to the opposing lawyer's client." TEX. DISCIPLINARY R. OF PROF'L CONDUCT 3.08 cmt. 10. Where, as here, M-I has merely alleged a "purported possible conflict of interest sometime in the future," the Court does not find a sweeping disqualification appropriate. *Fed. Deposit Ins. Co.*, 50 F.3d at 1315. The Court will reconsider the issue after Miller's deposition has taken place and the Court is better able

---

[2] The Court notes, however, that the ABA Rule dealing with calling lawyers as witnesses differs materially from Texas Rule 3.08. ABA Rule 3.7 provides, relevant to this discussion, that a "lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by [ABA] Rule 1.7 or Rule 1.9." MODEL RULES OF PROF'L CONDUCT R. 3.7(b) (2009). ABA Rule 1.7 discusses duties to current clients, a consideration not relevant here. ABA Rule 1.9 discusses duties to former clients, and serves as the counterpart to Texas Rule 1.09, *see supra* p. 3. If B&M has not run afoul of its duties to former clients in this case, then ABA Rule 3.7 does appear to allow an attorney to act as an advocate even where a colleague in the firm is likely to be called as a witness.

to conduct a full balancing of the "various ethical precepts [and] social interests at stake." *Id.* at 1314.

The Court hereby orders:

1. That M-I produce documents or affidavits relating to its acquisition of GCS and SPS. Pertinent documents include any asset purchase or stock acquisition agreements;

2. That Miller appear for a supervised deposition;

3. That Defendants' Motion to Quash (Doc. No. 106) is **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 17th day of November, 2009.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**